JOHN B. LEVERICH, Respondent, *against* WEEKS W. CUL-
VER *et al.*, Appellants.

(Decided June 6th, 1887.)

Several adjoining lots of land of a judgment debtor, on part of which
   a building generally known as "The Standard Theatre," had been
   erected, upon sale under execution, were purchased by plaintiff, the judg-
   ment creditor.   Defendants, who controlled another judgment against
   the same debtor, entered into an agreement with plaintiff, reciting his
   judgment and execution and the sale under it, describing the property
   as "the premises known as the Standard Theatre," and further recit-
   ing that the holder of the judgment controlled by defendants was to
   be permitted by plaintiff to redeem "the said premises" from such
   sale; wherefore defendants agreed to pay plaintiff a certain sum out of
   the first money collected by them "in or upon any claim or claims to the
   lease or leases of the said premises, or the possession of the said prem-
   ises, or by reason of such claim or claims being made, or by reason of
   redeeming the premises as aforesaid, or the owning or controlling any
   judgment against the said" debtor.   Defendants furnished the money
   necessary to make such redemption; and afterward, and by reason of
   defendants' controlling the judgment under which the redemption was
   made, they received a sum of money, less than the amount mentioned
   in the agreement, being part of the rent coming from that part of the
   land not covered by the theatre building.   *Held*, that plaintiff was
   entitled to recover such sum from defendants; that the agreement
   was intended to cover the entire property, not the theatre property
   only; and even if not so construed, it did not limit the liability of
   defendants to the contingency of money to be acquired from some-
   thing in connection with the theatre property specifically.

APPEAL from a judgment of this court entered upon
the report of a referee.

The facts are stated in the opinion.

*S. Jones*, for appellants.

*Henry J. Schenck*, for respondent.

BOOKSTAVER, J. — The evidence in this case is almost
altogether in writing, and none of the facts are disputed.

Leverich *v.* Culver.

These facts, as far as we deem them necessary to determine the questions involved, are as follows :

* On March 30th, 1875, William L. Skidmore, as receiver and special guardian, leased to Joseph Hart, for a term of ten years, what was then known as Nos. 545 and 547 Sixth Avenue; and two lots of land in the rear of those lots. No. 547 Sixth Avenue is now known as 1287 Broadway. There was then, and is now, on it a four-story building. The lease contained a covenant by Joseph Hart to expend at least $50,000 in the erection of a building or buildings on the demised premises, exclusive of that portion now known as 1287 Broadway.

Hart entered into possession, under the lease, on the 1st of May, 1875. On the 1st of April, 1875, Hart and Joseph Dowling entered into a co-partnership for carrying on the theatrical business, to continue for ten years, from May 1st, 1875. Dowling contributed $60,000 to this co-partnership; and what was known as the Eagle Theatre was erected on the demised premises, other than the lot 1287 Broadway. On September 1st, 1875, Hart mortgaged the Skidmore lease and the demised term to Joshua C. Sanders, for $25,000; who, on the 28th of September, 1875, duly assigned the same to Bernard Earle. On November 10th, 1875, the co-partnership between Hart and Dowling was dissolved by mutual consent, Hart agreeing to repay to Dowling the $60,000 contributed by Dowling, within five years from November 20th, 1875; and that, if the whole or any part of the sum should remain unpaid at the end of five years from that date, Dowling should have the right to enter into possession of the leasehold premises, and retain absolute possession thereof, for his own benefit, until within 90 days of the expiration of the Skidmore lease. No part of the $60,000 was ever paid.

On the 25th of October, 1877, a transcript of a judgment theretofore rendered, in favor of the plaintiff and against Hart, for $21,398.89, was duly docketed in New York County. On the 2nd of February, 1878, Hart sublet all the premises covered by the Skidmore lease, except 1287

Broadway, to William Henderson, for two years from March 1st, 1878, at an advanced rental, with privilege of renewal for five additional years; which sublease, Hart, on the same day, assigned to Joshua C. Sanders, who, on the 11th of February, 1878, executed and delivered to Hart an agreement that he would make certain dispositions of the rent, when collected, under the sublease.

On the 27th of April, 1878, an execution was issued, based on the judgment theretofore recovered by the plaintiff, to the sheriff of New York County, who, by virtue of it, sold at public auction, on the 16th of July, 1878, to the plaintiff, for $750, all the right, title, and interest, which Hart had on the 25th of October, 1877, in and to the premises demised to him by the Skidmore lease, and thereupon the sheriff delivered to the plaintiff the proper certificate of sale. On the first day of July, 1878, William Laimbeer recovered a judgment against Hart for $13,399, which was, on the first day of July, 1879, docketed in the clerk's office of the City and County of New York, and, on the 31st of July, 1879, this judgment was assigned by Laimbeer to John D. Lewis.

Lewis was the nominee, and acted in the interests of the defendants in this action, and the defendants, after the assignment, controlled the last mentioned judgment.

Under this last judgment Lewis, about September 18th, 1879, made the payment and did the acts required to redeem from the sale under the plaintiff's judgment. This redemption was made under the agreement hereafter to be considered. At the time of this redemption and agreement, all the right, title, and interest of Hart to the demised premises had been assigned to Lewis, by Louis F. Post, assignee in bankruptcy of Hart. But this assignment in no wise affected the lien of plaintiff's judgment, as the proceedings in bankruptcy were not commenced until after this judgment had been duly docketed.

On November 3d, 1879, the sheriff executed to Lewis a deed pursuant to his redemption. Prior to the said redemption, and the docketing of the Laimbeer judgment,

but subsequently to the docketing of the plaintiff's judgment, the following transactions had occurred:

On February 15th, 1879, the administrator of Joseph Dowling, who had died before that time, assigned to Weeks W. Culver, one of the defendants herein, the agreement made on the dissolution of the partnership between Hart and Dowling, which was not recorded until after March 21st, 1879.

On the last mentioned day, Earle commenced an action to foreclose the $25,000 mortgage assigned to him, making, among others, Hart, the plaintiff, Laimbeer, and the administrator of Dowling, parties defendant. Plaintiff and the administrator answered, setting up various defenses. Laimbeer did not answer.

On receiving from the sheriff the certificate of redemption, Lewis commenced a suit in the Supreme Court against Joshua C. Sanders, Bernard Earle, William Henderson, and others, based upon that certificate and the interest in said premises which Lewis had acquired in the manner hereinbefore stated. The purposes of this last suit were to annul the assignment to Sanders by Hart, and the agreement of February 11th, 1878, between the same parties; to compel Sanders to account to Lewis for all moneys received by him from Henderson, under the lease from Hart to Henderson; to compel Henderson to pay future accruing rents to Lewis; to restrain Henderson from paying and Sanders from collecting any further rent under that sublease; to have a receiver appointed, etc.

An order was obtained restraining Sanders, as in the complaint asked for; and thereafter, and on the 25th of September, 1879, a receiver was appointed.

Subsequently, and on the 15th of May, 1880, all the parties to the Lewis suit entered into a written stipulation; and, on the 30th of May, 1880, judgment was rendered in that action, in accordance with the terms of the stipulation.

The redemption by Lewis, made, as before stated, on the 18th day of September, 1879, was made under the following circumstances: The defendants provided the $750 with

interest, amounting to $61.75, for the purposes of the redemption, and the sheriff, thereupon, granted the proper certificate of redemption. Prior to the redemption, and in order to enable Lewis to redeem, the plaintiff and the defendants in this action entered into an agreement in writing, whereby it was provided that, " Whereas the said Leverich had obtained in the Supreme Court of the State of New York, the judgment referred to against Joseph Hart; and whereas, under an execution on such judgment, all the right, title, and interest of said Hart in and to the premises known as the Standard Theatre was sold by the sheriff for the city and county of New York, on or about July 16th, 1878, to said Leverich, for $750; and whereas Lewis, as assignee of a judgment against said Hart, is to be permitted by said Leverich to redeem the said premises of and from the said sale aforesaid; therefore the defendants, composing the firm of Culver & Wright, agree to and with the said Leverich to pay him, his executors, administrators, and assigns, the sum of $1,750, out of and from the first money or property which may be collected, realized, or obtained by them or either of them, or by any assignee of them or either of them, or by any person for the benefit of them or either of them, in or upon any claim or claims to the lease or leases of the said premises, or the possession of the said premises, or by reason of such claim or claims being made, or by reason of redeeming the premises as aforesaid, or the owning or controlling any judgment against the said Hart."

After the delivery of the agreement, the plaintiff paid to defendants $561.75, the difference between $250 and $811.75, which was the amount paid to the sheriff by the defendants, through Lewis.

The complaint in this action is founded upon the agreement above set forth; the 19th paragraph of which is as follows: " Upon information and belief, that in said suit last hereinbefore mentioned [the Lewis suit] a stipulation was signed and entered into by all the parties thereto, under which stipulation the defendant Culver collected, realized, or obtained, before the commencement of this action, the

sum of seventeen hundred and fifty dollars." · This allegation is admitted.

On the trial, the defendants were permitted to amend their answer, changing $1,750 to $1,342.84, as the sum which they so received. The referee found that the sum which the defendants actually received under the agreement was $1,484.50. It was paid to them by Bernard Earle, and was part of the rent coming from that portion of the premises demised to Hart and redeemed by Lewis, known as No. 1287 Broadway, which adjoined what was formerly known as the Eagle Theatre, but now known as the Standard Theatre. He also found that this sum of $1,484.50 was received by the defendants by reason of their controlling the Laimbeer judgment, by or through which they were enabled to redeem the premises from the sale under plaintiff's judgment.

The defendants' contention is that, although they received this money under the agreement, yet, as it did not come from the Standard Theatre premises, but from another portion of the premises demised to Hart, their obligation to the plaintiff did not mature.

The Skidmore lease to Hart covered the entire premises, including 1287 Broadway. The mortgage given to Sanders and assigned to Earle also covered the entire premises, and, if valid, was the first lien thereon. The Leverich judgment, from the time of its docket, became a second lien on the entire premises, as far as Hart's interest was concerned, and, in the event of the Earle mortgage being declared invalid for any reason would have become the first lien, subject only to any right Dowling's representatives might have had in the property, under the agreement for the dissolution of the co-partnership between him and Hart. Before the making of the agreement under consideration, Dowling's interest, whatever it was, had become the property of Culver, one of the defendants herein; and this right related to the entire premises.

All of Hart's interest, subject to the Earle mortgage and the Leverich judgment, had also vested in Lewis, the representative of the defendants, before the making of the agree-

ment in question, by reason of the assignment to him by Hart's assignee in bankruptcy. This interest, whatever it was, related to the entire premises. The Laimbeer judgment, from the time of its docket, was also a lien upon the entire premises as far as Hart had any interest therein at that time.

At the time the redemption agreement was made between plaintiff and defendants, the action for the foreclosure of the Earle mortgage was pending; and this, as before stated, covered the entire premises. This redemption agreement was made for the purpose of securing to the defendants, in the name of Lewis, the rights secured to the plaintiff by the sale and purchase under the execution on his judgment.

Under the circumstances, we think that the necessary and proper inference to be deduced from these facts, and from the language of the agreement itself, is, that the agreement was intended to cover the entire property, including 1287 Broadway.

The agreement does not describe any premises by metes and bounds; there is nothing in the language of the agreement which would necessarily exclude 1287 Broadway. The parties were negotiating to obtain all of the plaintiff's interest in the entire premises; for the agreement, after reciting the recovery and docketing of the Leverich judgment, proceeds: " Whereas, under an execution issued upon such judgment, all the right, title, and interest of said Hart, in and to the premises known as the Standard Theatre, were sold by the sheriff of the city and county of New York, on or about the 16th of July, 1878, to said John B. Leverich."

As before stated, the lien of the judgment was upon the entire premises, including 1287 Broadway, and Hart's interest in the entire premises was purchased under the sheriff's sale in the agreement referred to. Surely, the plaintiff in this action could not have successfully contended that only the Standard Theatre property specifically was transferred to Lewis by the redemption proceedings; and, if this is so, we do not perceive how it is possible for the de-

fendants in this action to limit the agreement to the Standard Theatre premises only; and we think the learned referee erred in making such limitation of the agreement. Had he found that the agreement covered the entire premises, as we think he should, there would have been an end to all controversy in this matter.

But while we so think, the agreement was not intended to limit the liability of the defendants to the contingency of money or property to be acquired from something in connection with the Standard Theatre property specifically, but it may be .construed to establish another and independent ground of liability aside from this. There is nothing in the grammatical construction of the agreement which precludes this, nor prevents us from supposing the words, "by reason of," to have been omitted in the last clause, simply because it had been repeated two or three times before.

The money was obtained by the defendant Culver upon a claim to the lease or leases of the premises known as "The Standard Theatre," or by reason of his right to the possession of the premises, or because of his assertion of such a right based on the redemption before mentioned, and his right to control the Laimbeer judgment. This claim was strongly enforced when the Lewis action was instituted. This claim was of such an imperative character that Henderson could pay no more rent to Sanders, and Sanders was compelled to account for the rent which he had collected. Even if the claim so enforced were groundless, it might well be contended that the money was paid to the defendants by reason of the claim having been made.

But the defendants contend that the referee erred in finding that the Laimbeer judgment was controlled by defendants. The answer admits such control. The language of the agreement itself implies this; and it is admitted that the defendants furnished the money with which Lewis made the redemption ; and we think these facts were sufficient to warrant the referee's findings.

. But if this were not so, we think it would make no dif-

ference ; for the agreement does not say who shall own the claim, or who shall make it, or that it shall be valid; nor does it say who shall own or control the judgment against Hart.

We therefore think that the judgment may be sustained upon the ground on which the learned referee based his decision.

Although the applicants did not argue any of the exceptions to the reception or exclusion of evidence, either orally or in writing, we have, nevertheless, examined them, and think, if any evidence was improperly admitted, that it was afterwards cured by the defendants themselves offering the same and similar evidence.

The judgment should therefore be affirmed, with costs.

LARREMORE, Ch. J., and ALLEN, J., concurred.

Judgment affirmed, with costs.